IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **MARCIA MADERO DEGUERRE,** § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **FTI CONSULTING, INC.,** § <br> § <br> *Defendant.* § | CAUSE NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Marcia Madero DeGuerre files this Original Complaint against Defendant FTI Consulting, Inc. and respectfully shows the following:

### NATURE OF SUIT

1. Plaintiff brings this lawsuit for religious discrimination and wrongful employment termination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* and Chapter 21 of the Texas Labor Code.

### PARTIES

2. Plaintiff Marcia Madero DeGuerre ("Plaintiff" or "DeGuerre") is an individual citizen of the state of Texas residing in McKinney, Texas, in the Eastern Judicial District of Texas.

3. Defendant FTI Consulting, Inc. ("Defendant" or "FTI") is a Maryland corporation doing business in the State of Texas and may be served by process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C.A. § 1331 because Plaintiff presents a federal question arising under Title VII of the Civil Rights Act,

42 U.S.C. § 2000e, *et seq*. The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C.A § 1367 because it is so related to the federal claim raised by Plaintiff as to form part of the same case or controversy under Article II of the United States Constitution.

5. Plaintiff is a citizen of Texas. She is domiciled and worked for FTI in Collin County, which is within the Eastern District Court of Texas. Venue is appropriate in this judicial district because the events that give rise to Plaintiff's claims occurred in whole or in part in this District.

6. Plaintiff timely filed a charge of discrimination with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC") on or about October 18, 2022, which is within 180 days of the act or occurrence giving rise to Plaintiff's claims.

7. Pursuant to Section 21.253 of the Texas Labor Code, the TWC advised Plaintiff on or about February 3, 2023, that it would not be able to complete its investigation of Plaintiff's Charge within 180 days of its filing. Accordingly, Plaintiff requested the issuance of an expedited notice of right to file civil action.

8. The TWC issued Plaintiff her Notice of Right to File Civil Action on March 15, 2023. The EEOC issued Plaintiff her Notice of Right to Sue on March 20, 2023.

9. Plaintiff filed this lawsuit within the 60-day deadline established by the Texas Labor Code and within the 90-day deadline established by Title VII. Accordingly, all conditions precedent to Plaintiff's right to file this Complaint have occurred.

## FACTUAL ALLEGATIONS

10. FTI is a global business advisory firm dedicated to assisting its clients to mitigate risk and resolve disputes in financial, legal, operations, political and regulatory, reputational and transactional arenas.

11. Plaintiff is a lawyer who became employed by FTI in its Technology group in December 2014 as an Acuity Director. She worked as a Director managing electronic discovery reviews in FTI's New York office, and she briefly ran FTI's London office before the COVID-19 pandemic. She was promoted to Senior Director in spring 2020.

12. As part of its response to the COVID-19 pandemic, FTI discontinued its in-office work model for all technology employees, including Plaintiff. The decision led to a fundamental restructuring of the way FTI provides electronic discovery services for its clients, moving away from the use of onsite "boiler rooms" to utilizing off-site contract attorneys who are shipped secure FTI laptops to work remotely from home. Like the contract attorneys she supervised, Plaintiff became a remote employee, working offsite 100% of the time.

13. After FTI implemented its remote work model, Plaintiff spoke with her supervisor, Senior Managing Director Kathryn McCarthy, about the possibility of relocating to Texas with her family and working remotely from there. After checking with senior leadership, McCarthy confirmed that Plaintiff could move to Texas and continue her remote employment.

14. Plaintiff and her family moved to McKinney, Texas in spring 2021. Despite the presence of an FTI Texas office, Plaintiff has never set foot in the office. Not only was Plaintiff not expected by FTI to be present in its Texas office, neither the Texas office nor any other FTI office was permitted to perform managed reviews with contract attorneys onsite due to the

COVID-19 restrictions implemented by FTI. Thus, even if Plaintiff wanted to work from the FTI office to perform her job duties, she could not do so.

15. In September 2021, FTI implemented a COVID-19 vaccine mandate and advised all employees that they would have to disclose their vaccine status by November 4, 2021.

16. On October 11, 2021, Texas Governor Greg Abbott signed Executive Order GA-40, which provides that as a matter of Texas law, "No entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or consumer, who objects to such vaccination for any reason of personal conscience, based on a religious belief, or for medical reasons, including recovery from COVID-19."

17. Evidently anticipating that some employees would have religious objections to its vaccine mandate, FTI created a form for use by employees seeking a religious exemption. On October 29, 2021, Plaintiff submitted her request for an exemption based on her sincerely held religious beliefs that conflicted with the vaccine policy. Plaintiff's exemption request provided all information sought by FTI, including articulating the religious beliefs that required her to reject the vaccine. Further, despite FTI's overreaching request that Plaintiff also submit a statement from her religious leader supporting her exemption request, Plaintiff provided this supporting statement as well.

18. In her request for an accommodation to the vaccine mandate, Plaintiff pointed out that she had been working remotely for almost the entirety of the COVID-19 pandemic, and that she and others in the technology Acuity-managed review group had done so successfully. Inasmuch as her virtual working environment never placed her in the presence of other employees, Plaintiff requested that FTI simply allow her to continue working remotely without receiving the COVID vaccination.

19. Plaintiff also volunteered that in the event FTI ever requested that she be in the presence of other employees, FTI could accommodate her religious objection to the COVID-19 vaccination by having her submit to a COVID-19 test prior to the meeting and/or wearing a face covering at the meeting. Plaintiff also offered to consider any other accommodation FTI might propose.

20. On December 7, 2021, FTI "temporarily approved" Plaintiff's accommodation request.

21. Plaintiff continued working remotely, interacting with other FTI employees only through telephonic and electronic communications.

22. Five months later, in May 2022, FTI changed its mind about accommodating Plaintiff's religious objections to its policy. FTI advised Plaintiff that, despite its ability to accommodate her religious objection to receiving the COVID-19 vaccination for the previous five months and despite no change to Plaintiff's working from home 100% of the time, Plaintiff would need to be vaccinated or she eventually would be fired.

23. Specifically, FTI advised Plaintiff that if she continued to refuse to receive the COVID-19 vaccination, it would terminate her employment on September 30, 2022. Thus, although it professed a compelling need to ensure that all employees were vaccinated, FTI was prepared to allow, and did allow, Plaintiff to work remotely for almost another five months—and ultimately for nearly a full year after its initial mandate—without receiving the vaccination.

24. In addition to Plaintiff's job remaining virtual as of May 2022, nothing about Plaintiff's virtual working environment was slated to change. For the four and a half months after FTI advised Plaintiff she would be terminated if she did not agree to take the COVID-19 vaccination, Plaintiff and her colleagues continued working remotely. As of the day of Plaintiff's

termination on September 30, 2022, Plaintiff and her colleagues were still working remotely. To Plaintiff's knowledge, FTI had no plans to require the Acuity-managed review group to return to the office.

25. Plaintiff had multiple conversations with Human Resources representatives regarding her desire to retain her employment without having to violate her religious beliefs. In addition to the obvious question as to why her position as an entirely virtual employee made it necessary for her to receive the COVID-19 vaccine, Plaintiff again offered to submit to testing and/or to wear a face mask if she ever were to be in the presence of other employees or to consider any other accommodation FTI might propose.

26. Rather than engage in an accommodation discussion or interactive process with Plaintiff, FTI representatives told Plaintiff it had no obligation to consider any accommodation to its vaccination policy. FTI has never offered Plaintiff an explanation for why it could not accommodate her religious objection to its vaccine policy.

27. On August 11, 2022, FTI confirmed that it would not continue to accommodate Plaintiff's request for an exemption to its vaccine mandate and it advised her she would be terminated on September 30, 2022.

28. On information and belief, FTI continued to employ other unvaccinated employees through the end of 2022. On information and belief, FTI has granted exemptions to its COVID-19 vaccination policy to employees with disabilities who said they could not take the vaccination due to their disability.

29. On or about March 3, 2023, FTI announced to its workforce that it was rescinding its COVID-19 vaccination policy and workers would no longer be required to be vaccinated to retain their employment with FTI. Thus, even if it could articulate a rationale as to why it could

not accommodate Plaintiff's religious objection to the vaccination policy—which it cannot—Plaintiff clearly should be employed at FTI today.

30. FTI's unlawful decision to terminate Plaintiff's employment caused her to suffer significant loss of compensation and benefits, and it has caused her considerable emotional turmoil.

31. All conditions precedent to Plaintiff's claims against FTI have occurred.

### III.   CLAIMS

**B.   Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.**

32. Plaintiff realleges and incorporates by reference each of the above allegations as though reproduced in each of the following paragraphs below.

33. Defendant FTI is an "employer" and Plaintiff is an "employee" as those terms are defined in Title VII. FTI is in the largest category of employers identified in Title VII in that it employs more than 500 employees.

34. Title VII prohibits FTI from discriminating against its employees because of their religious beliefs. Further, Title VII requires FTI to accommodate an employee's sincerely held religious beliefs that conflict with company policy unless the accommodation would impose an undue hardship on the conduct of the employer's business.

35. Plaintiff is an Evangelical Christian. The preeminent guide in Plaintiff's life is the Bible, which she believes to be the inspired word of God. She pursues a personal relationship with God through Bible reading, prayer, corporate worship, and fellowship with other believers.

36. When she requested an exemption to FTI's COVID-19 vaccination policy, Plaintiff set forth the basis of her religious objection based on her Christian beliefs. She supported her objection to receiving the vaccination based on specific Scriptures, including:

- Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore honor God with your bodies.

I Corinthians 6:19-20. Plaintiff articulated her understanding that the vaccine would affect her DNA, the blueprint for bodily integrity, and her belief that if she took the vaccine, she would be desecrating her body, the temple of the Holy Spirt.

- If you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it. For you are not following your convictions.

Romans 14:23. Plaintiff explained that this instruction against eating things a believer doubts she should eat applies similarly to taking a vaccine into her body. Because she was convicted that she should not take the vaccine, she would not be following her conviction if she were to take the vaccine and, thus, she would be sinning.

- "You knit me together in my mother's womb."

Psalm 139:13. Plaintiff articulated that based on this Scripture, she believes life begins at conception. Because each of the COVID-19 vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines, Plaintiff could not in good conscience take the vaccines.[1]

---

[1] As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine." *See* North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021), available at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. Meredith Wadman, Vaccines that use human fetal cells draw fire, Science (June 12, 2020), available at https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

The North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA states that the vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to

- "Let the peace of Christ rule in your hearts."

Colossians 3:15. Based on the foregoing Scriptures and after prayer and spiritual counsel, Plaintiff did not have peace about taking the vaccine. She could not let the peace of Christ rule in her heart if she were to receive the vaccine, which would violate this Scripture's directive.

- "Cling to your faith in Christ and keep your conscience clear."

I Timothy 1:9. Plaintiff could not retain a clear conscious if she were to take the vaccine contrary to her convictions.

37. Plaintiff also included in her exemption request a statement from her pastor, which confirms:

> At Upper Room Frisco we encourage congregants to pursue a personal and intimate relationship with Jesus Christ and to hear from God in their Christian walk. In regards to her objection to the COVID 19 Vaccine, Marcia DeGuerre's objection is consistent with the word she is hearing form God through the Holy Spirit and her reliance on Romans 14:23 and I Corinthians 6:19-20 is well placed. As such, as Pastor of Upper Room Frisco, I support her objection to the COVID Vaccine.

38. In her exemption request, Plaintiff pointed out that she had been working remotely for almost the entirety of the COVID-19 pandemic, and that she and others in the technology-managed review group had done so successfully. Inasmuch as her virtual working environment never placed her in the presence of other employees, Plaintiff requested that FTI simply allow her to continue working remotely without receiving the COVID-19 vaccination.

---

characterize the SARS-CoV-2 spike protein." *See* North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021), available at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

The Louisiana Department of Health's publications also confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, You Have Questions, We Have Answers: COVID-19 Vaccine FAQ (Dec. 12, 2020), available at https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

PLAINTIFF'S ORIGINAL COMPLAINT – Page 9

39.     Rather than respond to Plaintiff's request with an explanation as to why her request for an accommodation from the vaccination policy would pose an undue hardship, FTI told Plaintiff it had no obligation to accommodate her objection.

40.     FTI's failure to consider reasonable accommodations to its vaccine policy—such as waiving the vaccine requirement in view of Plaintiff's 100% virtual working environment and/or allowing her to submit to testing and wearing a face mask if she were ever asked to be in the presence of other employees—is a complete abdication of FTI's obligations under Title VII.

41.     FTI's decision to terminate Plaintiff's employment instead of accommodating her religious objections to its vaccine policy violates Title VII's prohibition against religious discrimination.

42.     As a result of FTI's unlawful conduct, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court.

**B.**     **Chapter 21 of the Texas Labor Code.**

43.     Plaintiff realleges and incorporates by reference each of the foregoing allegations as though fully reproduced in each of the paragraphs below.

44.     Defendant FTI is an "employer" and Plaintiff is an "employee" as those terms are defined in Chapter 21 of the Labor Code.  FTI is in the largest category of employers identified in the Labor Code in that it employs more than 500 employees.

45.     Section 21.051 of the Labor Code prohibits FTI from discriminating against its employees because of their religion. Further, Section 21.108 of the Labor Code requires FTI to accommodate an employee's sincerely held religious beliefs that conflict with company policy unless the accommodation would impose an undue hardship to the conduct of the employer's business.

46. FTI's refusal to accommodate Plaintiff's sincerely held religious beliefs that conflicted with its vaccination policy, as more fully articulated above, and instead to terminate Plaintiff's employment constitutes unlawful religious discrimination in violation of Chapter 21.

47. FTI's unlawful conduct has caused Plaintiff to suffer damages in excess of the minimum jurisdictional limits of this Court.

**C.    Attorneys' Fees.**

48. Plaintiff realleges and incorporates by reference each of the foregoing allegations as though fully reproduced in the paragraphs below.

49. As a result of FTI's conduct as described above, it has been necessary for Plaintiff to retain the services of the undersigned attorneys and to incur the reasonable and necessary attorney's fees associated with the pursuit of this matter.

50. Pursuant to the relief provided by Title VII and the Texas Labor Code, Plaintiff is entitled to recover her reasonable and necessary attorney's fees incurred herein.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marcia Madero DeGuerre prays that Defendant FTI Consulting, Inc. be cited to appear and answer herein, and that upon final trial, she be awarded judgment against Defendant and the following relief:

1. A permanent injunction prohibiting Defendant from engaging in further unlawful employment actions;

2. Back pay and lost benefits;

3. Interest on backpay;

4. Future lost wages and benefits;

5. Compensatory damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses;

6. Nominal damages;

7. Punitive damages in an amount to be determined by the jury;

8. Reinstatement to her former position with seniority;

9. Reasonable and necessary attorneys' fees;

10. Prejudgment and post-judgment interest as allowed by law;

11. All awardable costs of this action, including expert witness fees;

12. Such other and further relief to which she may be justly entitled.

Respectfully submitted,

By: /s/ Julie Heath

Julie E. Heath
Texas Bar No. 09348050
FARROW-GILLESPIE HEATH WILMOTH LLP
1900 N. Pearl St, Suite 2100
Dallas, Texas 75201
(214) 361-5600 (telephone)
(214) 661-6951 (fax)
julie.heath@fghwlaw.com

Sorin A. Leahu*
Illinois Bar No. 6315515
LEAHU LAW GROUP, LLC
53 W. Jackson Blvd., #1527
Chicago, IL 60604
847-529-7221
sleahu@leahulaw.com

ATTORNEYS FOR PLAINTIFF
MARCIA DEGUERRE DEGUERRE

*Pro hac Vice* application pending

PLAINTIFF'S ORIGINAL COMPLAINT – Page 12